Case number 22-1235 et al. Sierra Club and Public Citizen Petitioners versus Federal Energy Regulatory Commission. Mr. Matthews for the petitioners, Mr. Glover for the respondent, Ms. Stetson for the respondent interviewers. Good morning again Mr. Matthews and the podium is at the right. We're all we're all good for right now. So again Nathan Matthews this time on behalf of Petitioners, Sierra Club and Public Citizen. This case also challenges FERC's extent a decision to extend the deadline for construction of a gas infrastructure project. In the prior case our argument was that FERC failed to confront evidence indicating affirmatively indicating a lack of good cause and in this case the issue is really the lack of any evidence whatsoever. The primary issue here is the lack of facts. FERC's entire analysis here consists of the statement that the pandemic had adverse economic and logistical impacts on Chenier's investment and construction decision. That's in their brief at page 27 at footnote 7 citing JA page 5. The interveners starting on page 1 of their brief admit that the logistics are not actually at issue. There's no facts in this case similar to like the stay at home order that was found in NTE Connecticut. Nothing saying that they couldn't get stuff they and in fact they did build a compressor station in 2020 so it's clear that they could build things in Texas during this time. So as the interveners argue what's at issue really is just the second half of FERC's sense of analysis about impact on the global LNG market and purely economic issues and our claim here is just that that half a sentence isn't enough to be the entire support for FERC. So it seems to me Mr. Matthews that you're asking for a super clear statement rule like your your problem appears to be with the way they phrase this and if I if I may you what it said in the request for extension of time was the onset and duration of the COVID-19 pandemic resulted in adverse economic and logistical conditions that slowed commercial progress and precluded CCL stage 3 for making a timely final investment decision on the stage 3 project in order to meet the current permitted construction duration. So and then it says this delay in full commercialization has resulted in the need for additional time to construct and place the stage three project in service and you're saying that that's not sufficient to say that they were prevented from moving forward with the project based on these COVID-related problems and I'll to note that final investment decision is a term of art that people in the industry would understand to mean we couldn't get to this decision which our financing depends on this decision. So it just seems to me that you're asking for a super clear statement rule that you're refusing to just look at what this means more broadly but you're picking apart the words that it doesn't use the word prevent. So we did maybe I can take one issue off the table which is you know at this point I think all parties agree that FERC's finding of a good cause here did rest on the conclusion that Chenier was prevented from meeting the deadline. So we aren't the FERC's orders didn't ever say sure Chenier was prevented from meeting the deadline. I think it did because the extension order said the companies explained that good cause exists because the adverse economic and logistical impacts of the COVID-19 pandemic prevented them from making a timely investment decision on the project to meet construction deadlines. So that's in the order and then they go on to grant the extension. The implication is they agree with that. So we are fine to narrow the issues here to being the question of whether the record supports the deadline. I think that asking for more facts beyond what is it in the record here is not equivalent to asking for a sort of an unusual or heightened super clear statement rule. You know FERC says repeatedly in its brief that it makes a case-by-case evaluation and there are no case specific facts here. You know meeting a final investment decision is not a prerequisite for all construction and we know that here because they built a compressor station in 2020 well before having made final investment decisions. And as Chenier says in its brief they did a lot of other construction in January through March of 2022 even though they didn't actually make a final investment decision until after FERC issued the extension here. FERC issued the order in May when FERC was aware that Chenier was already resuming a lot of construction. But why isn't this project specific? They couldn't make the final investment decision in order to meet the current permitted construction duration. Well so we don't know why they couldn't reach the final investment decision. You know there's nothing about how much financing did they have how much because of the adverse economic and logistical conditions is what they said because of COVID. So there's no information about how many contracts for buyers do they need before they can reach you know be confident. I think that some sort of facts are necessary and that is one type of fact that they could have provided. I think that there are probably quite a few different types of facts they could have presented other than just saying there's a pandemic and so we'd like some more time. What one path would have been to say we can't be confident in this project until we have got investment sufficient you know contracts for 70% of our output or something. We've only got 20% and so we think it's going to take some time to get more like something like that just anything other than markets are in a slump and we'd like more time. I also think that you know as we argue here and as FERC stated in the extension order here a change in market support for a project can constitute a changed circumstance that would undermine a public convenience and necessity fine or here it's both section 3 and section 7 but undermine a public interest finding. And so if FERC it is a departure from FERC precedent to just rely on changed market circumstances here that's not necessarily arbitrary but it needs to be explained and given that there's not any facts explaining you know exactly how much investment they were missing how much they had if that really is the mechanism here or if it's just you know we we could pursue this project but we're not sure it's going to be and maybe it'd even be profitable we don't know if it's going to be as profitable as we thought. If FERC thinks that that's a good reason good enough reason for a delay we just needed some sort of specifics and part of that is because you know FERC has recognized the need to accept public comment on these and if there are no facts there's no possibility for us to rebut any of those facts there's nothing for us to push back on here and and maybe they would have put forth facts and we would have been forced to say yeah that seems pretty good you know we haven't made good cause challenges to every project that's not an extension by any means but there needed to be something here that for for the links in the causal chain explaining why did the market downturn prevent you from getting the final investment decision mean you couldn't have been doing more construction than the construction that they already did. I see I'm cutting into my rebuttal time but if there are further questions. Any questions from my colleagues? None from me. No thank you. Thank you very much. May I begin? Oh yes please. Yes. Judge Rogers is the mic loud enough? Great. Thank you. May it please the court Matthew Glover and I represent the Respondent Federal Under Regulatory Commission. Before I begin I'll just make a note this is the first time I've appeared in the court since the passing of your colleague Judge Buckley and I extend my condolences he was an excellent public servant and I always enjoy admiring his portrait when I'm in the courtroom. Thank you. Judge Pana as you asked both was in council here and in the prior case the good cause standard is flexible it you know I think you had quoted again again in the earlier argument that we've said if you ask for an extension during the time in which your environmental findings will still be valid we will generally grant it if you establish good cause. Here we stated one way that you can establish good cause is by showing that you've made a good faith effort to continue with the project and you were prevented from doing so by unforeseeable circumstances. We tied that here to their efforts with respect to pre-construction activities their plan b implementation their continued preparation they're placing a compressor service into station into service excuse me and then we added that they were you know stopped by unforeseen circumstances you know I won't repeat Judge Pana what you've read to my colleague from paragraph 11 talking about or paragraph 10 sorry on JA6 talking about what we found in terms of their attempts to make a final investment decisions in the adverse economic and logistical consequences of the pandemic. I would also note you know we cited in paragraph 11 and in footnote 29 the Delphin case which also dealt with a further description Judge Rogers again in the first case you mentioned these other cases where FERC has those cases there we distinguish Chestnut Ridge and if anything Chestnut Ridge shows that this good cause case-by-case determination is not merely a rubber stamp we look at things like is the project still commercially viable in Chestnut Ridge they had taken no action since receiving that their certification they had waited till the week before the deadline for construction to even ask for an extension and we said it appeared that it was no longer economically viable here I believe they're pronounced chenier but the the project sponsor has you know taken these pre-construction actions they asked for the extension early and we made a predictive judgment about you know the viability of the project and all of that given what they told us and in fact our prediction has been proven correct the most recent monthly construction report that they filed which I believe captured July but not August but it may I may be confused August or July of this showed the project is 39.1 percent complete you know and even in the two monthly construction reports we put in the JA the January and the May they showed pre-construction activities I think it's at JA I think it's at 43 and in the May 2022 construction report talks about stabilizing a workforce or you know beginning to on I think the subcontractor on board is the term for getting workers ready that they're sort of engaged in all of these behaviors that COVID has obviously impacted we did mention that COVID impacts the LNG markets it impacts these contracts we cited the EU's recent requests we discussed the uptick in demand from the European Union for LNG you know so I think that there's enough evidence here have you ever denied a request for an extension Chestnut Ridge the case I was mentioning was a denial of a request for an extension and actually I think this I'll answer a question you asked my colleague and I can't remember which one specifically your honor but a couple of times when parties have asked for an extension of a certain period of time we've actually granted them a shorter extension if that's important I can go back and look at my notes to figure out which of those orders it is but Chestnut Ridge was a denial of an extension and then in some of these other matters we have granted shorter extensions of time so again I would reiterate that this is not a rubber stamp by the commission we didn't depart from precedent I heard my friend say that here we absolutely didn't depart from precedent we discussed Delphin which was citing Chestnut Ridge and was applying sort of or discussing Chestnut Ridge that's paragraph 11 of the order we're entirely consistent with our other precedents uh you know we just haven't required parties to come in and give us a long laundry list of how COVID has logistically and economically impacted the LNG markets their final investment decisions we noted that they had contracts I believe for six million or six something uh I think it's is how we measure this you know long-term supply contracts they and their affiliates were continuing to seek those kind of contracts we noted all of that in the record again we cited the EU report showing an optimism for uh the rebound of the LNG markets and that this was still viable Chestnut Ridge we determined the project wasn't viable uh I just I want to correct one more thing because uh I think it was a misrepresentation twice in the reply and then my friend said it here today uh the whole economic and logistical impacts of COVID-19 yes it appears in our brief at page 29 footnote 7 that's not the only place it appears in our brief it appears in our affirmative argument at page 24 we discuss it there so the idea that we you know sort of put that argument forward only in a footnote is factually incorrect to one who reads our briefing so I didn't want that to go unresponded to it the court has no questions I'm happy to sit down and receive the time well I would like to know the examples um of cases where you granted a shorter extension than what was requested and maybe you could um figure that out while I hear from the interveners yeah let me check my notes and I'll come back okay thank you Miss Stetson thank you your honor may I please the court can everyone hear me all right yes so just a few quick points uh the first is I believe I heard Mr. Matthews concede that the only issue remaining in this case at this point is a substantial evidence question whether uh the record supports FERC's conclusion there was of course an argument made uh in Sierra Club's to the effect that FERC had not sufficiently articulated the standard we pointed out as did FERC that that was jurisdictionally barred he appears to be no longer pursuing that the second is Judge Pan you're absolutely right that what uh what Sierra Club is arguing here is for a super clear statement rule and what you proceeded to hear from Mr. Matthews was all of the ways in which perhaps more could have been said about how COVID impacted Chenier's ability to get this project done on a timeline in 2020 and 2021 but Judge Rogers as you said in the prior case we are all aware of the effects of the COVID pandemic uh on the world and on the country on the supply chain on people's ability to get to work and to operate uh there are all kinds of things that were unprecedented I believe are the words that Judge Rogers used and more to the point uh if you look at the record itself and what was actually said in the extension request in addition to the fact that work had to be suspended at the site in March of 2020 uh that uh Chenier was precluded from making a timely final investment decision in order to meet the deadlines at page 27 of the joint appendix there is a whole paragraph talking about the impact of COVID-19 on the global markets and importantly the forward-looking statements about what Chenier expects after this letter what Chenier says is uh long-term Chenier and its affiliates have signed multiple long-term contact contracts the strong global LNG market continues to drive commercial momentum CCL stage three anticipates imminently restarting early construction activities a revised construction schedule is provided in attachment one I'm reading all that because those are the things that were said in the record and they were said pursuant to 18 CFR 385.2005 which requires people to make statements that they certify are true and correct to their knowledge and all of those statements are evidence both of Chenier's inability to commit to the project to that final investment decision and to its forward-looking intention which in fact has been carried out to complete the project if there are no further questions anything from my colleagues no thank you thank you very much thank you your honor Mr. Glover are you prepared to address that question I brought about 30 orders here I'm only about halfway all right is it I'm sorry I didn't ask my colleagues before did do my colleagues have any questions for Mr. Glover no okay thank you we'll give you two minutes for questions thank you again your honor so Chestnut Ridge is my knowledge the only time FERC has ever denied an extension request I don't recall the citations I don't dispute though that sometimes FERC may have said we're giving you a shorter extension now but we'll give you another one later but the only time FERC has said no is Chestnut Ridge I just also want to reiterate that there is no evidence in the record here or even an assertion on the record here that you know pandemic restrictions on the workforce or supply chain issues about getting materials had anything to do with the ability to complete this project here not only did Chenier complete construction of a compressor station in 2020 but other projects that FERC oversees including other LNG terminals in Texas did substantial construction through 2020 and 2021 including the Golden Pass project and the Port Arthur project so so FERC both didn't have evidence that there was a anything other than the global LNG market impact at issue here and I think that they they didn't want to look into the issue they would have seen that that was not the case and you know we again we are not asking for like a long treatise on this just just some facts on on the causal chain explaining both you know what what would it have taken for FERC to have been able to or for Chenier to make a final investment decision so that we would know about what to push back on and some more facts explaining why Chenier was saying that they had just to halt the project because they weren't able to reach a final investment decision but they were still doing other things on the project and so there's no information about what could or couldn't have been done while waiting for that decision there are no further questions I thank the court for consideration thank you Mr. Matthews anything else for my colleagues no all right thank you all right it appears Mr. Glover has a follow-up on a question that I asked and will allow you to do that did have citations if you're still looking for them yes please the one I was thinking of is what's called Northwest Pipeline LLC I'm going to give you the citation for the order that describes the intervening order the citation is 171 FERC paragraph 61 comma 077 this was actually a third extension request but at paragraph three of this request we describe how in the second extension request this project sponsor Northwest had sought a two-year extension in a delegated order our office of energy projects gave them a one-year extension rather than the two years they wanted they wanted until April 11th 2021 we gave them till April 11th 2020 of course the bulk of this order because I don't have the delegate order in front of me discusses the current third extension interveners council helpfully pointed to a couple of earlier orders in which we actually denied an extension including quest star pipeline co citation of 65 FERC paragraph 61037 from 1993 uh sorry I'll slow down and then Seneca Lake storage 122 FERC paragraph 61212 from 2008 maybe council you might submit a letter just for the record okay sure I think that's a great idea thank you Judge Rogers thank you thank you are the cases submitted
judges: Henderson, Pan, Rogers